DECISION
Plaintiffs appeal the real market value (RMV) of their home for the 2009-10 tax year, from an Order of the Board of Property Tax Appeals (BOPTA) sustaining the assessor's roll values. The property is identified in the assessor's records as Account R2132793. A trial was held in the courtroom of the Oregon Tax Court on September 29, 2010. Chetan Shah (Shah) appeared for Plaintiffs. Defendant was represented by Jack Graff (Graff) and Donald MacNicoll (MacNicoll), certified appraiser. Mark Huffman (Huffman), certified appraiser, testified on behalf of Plaintiffs.
Plaintiffs' exhibits were admitted into evidence without objection. Defendant's exhibits were admitted into evidence over an objection made by Plaintiffs. Plaintiffs' motion to allow Huffman to participate as a witness via telephone was granted over an objection made by Defendant.
 I. STATEMENT OF FACTS
The subject property (subject) is an upscale custom-built home of approximately 6,500 square feet completed in 2008. The subject is located on 0.2 acres of land in a neighborhood of custom-built homes that borders a neighborhood of older, slightly lesser quality homes, some of which are similar in outward appearance and quality to the subject.
Plaintiffs previously appealed the 2007-08 RMV to this court when the home was under construction and 50 percent complete. The court in that case determined that the subject's *Page 2 
on January 1, 2007 was $638,930. Shah v. Washington CountyAssessor (Shah), TC-MD No 080354B, WL 140767 at *5 (Jan 21, 2009). Defendant corrected the assessment and tax rolls for the 2007-08 tax year based on the court's $638,930 RMV determination, allocating $265,000 RMV to the land and $373,930 RMV to improvements. The home was 90 percent complete for the 2008-09 tax year, and Defendant adjusted the subject's total RMV to $817,790, with $542,790 allocated to the improvements. The home was 100 percent complete for the 2009-10 tax year, which is the year under appeal.
During or after the time of the subject's construction, Plaintiffs discovered numerous defects in the home. Those defects include problems with the HVAC system, a crawl space smaller than required by Oregon law that suffers from standing water, a failure to install a gas grill in the garage, electrical issues relating to low voltage, and other problems. Plaintiffs have not repaired those defects. The parties have stipulated that those defects reduce the subject's improvement RMV by $262,600. Defendant asserts that the assessor's tax year 2009-10 RMV of $882,230 is a value adjusted to account for those defects. That RMV takes into account the final 10 percent completion of the subject for the 2009-10 tax year. Because of that additional 10 percent completion, the subject has an exception RMV of $98,600 for the 2009-10 tax year.
Plaintiffs have requested a reduction in their total RMV to $780,000 for the 2009-10 tax year, based on their appraiser Huffman's appraisal of the subject for January 1, 2009. Defendant requests that the subject's RMV of $882,230, which was sustained by BOPTA, be upheld.
 II. ANALYSIS
The issue before the court is the subject's RMV for the 2009-10 tax year. ORS 308.205(1)[1] defines RMV as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length *Page 3 
transaction occurring as of the assessment date for the tax year." ORS 308.205(2) provides that the RMV of property "shall be determined by with methods and procedures in accordance with rules adopted by the Department of Revenue." Those methods and procedures are set out in OAR 150-308.205-(A)(2)(a). They may be summarized as: (1) the cost approach; (2) the sales-comparison or market approach; and (3) the income approach. Allen v. Dept. of Rev., 17 OTR 248, 252 (2003). The parties must consider each approach to determine the RMV of a property; however, the RMV determined need not be the result of any of those approaches. OAR 150-308.205-(A)(2)(a). Furthermore, under ORS 305.412, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties."
Here, the parties found the cost and sales comparison approaches to be the most pertinent. Plaintiffs also present a third approach that relies upon the subject's value as determined in the prior Shah case, adjusted (1) upward for the subject's completion and (2) downward for construction defects and declining sales in the real estate market since 2007.
A. Cost Approach
The cost approach assigns a value to a subject property based upon the cost to build a similar new or substitute property. Appraisal Institute,The Appraisal of Real Estate 377 (13th ed 2008). That estimate is then adjusted for the subject's depreciation.Id. at 378. The cost approach is a useful method for appraising newly or recently constructed property, as well as property that has a small market. Id. at 382. The cost approach is also appropriate for appraising older property, so long as that property's depreciation can be measured. Id.
Here, the subject is a custom home built over the course of several years, and completed in 2008. Although the subject was not brand new at the time of Plaintiffs' appeal to this court in 2010, the subject's construction is recent. Additionally, the market for custom homes is *Page 4 
considerably smaller than the market for mass-produced homes. Those factors make the cost approach an appropriate method for appraising the subject.
Under the cost approach, Oregon's administrative rule recognizes the use of the reproduction, replacement, or used equipment technique. OAR 150-308.205-(A)(2)(f). Both Plaintiffs' appraiser, Huffman, and Defendant's appraiser, MacNicoll, used the replacement technique in their cost approaches. (Ptfs' Ex 1 at 3; Def's Ex A at 9.) The replacement technique measures "[t]he estimated cost to construct, at current prices as of the effective appraisal date, a substitute for the building being appraised using modern materials and current standards, design, and layout." Appraisal Institute at 385.
Huffman appraised the subject at $795,300 using the replacement or cost technique. (Ptfs' Ex 1 at 1.) Huffman's appraisal report includes differing values for above grade living area, below grade area, car storage, contributory value of site improvements, and land, and negative adjustments for depreciation and cost to cure construction defects. (Id. at 3.)
MacNicoll appraised the subject at $882,230 using the replacement technique. (Def's Ex A at 9.) MacNicoll's appraisal report includes values for the main area, upper story, basement, garage, open porch, paving, patio, fire sprinkler system, sauna, elevator, extra features, and land. (Id.) Although Defendant asserts that the $882,230 figure includes the stipulated cost of $262,600 to cure construction defects, the court cannot find any explicit negative adjustment in MacNicholl's report for that cost. (Id.) Instead, the values of the improvements are adjusted by a percentage. (Id.) In this case, the "rep[lacement] cost new" of the subject's improvements is $751,674, adjusted downward to a "final value" of $641,210. (Id.)
Plaintiffs specifically challenge MacNicoll's appraisal of the subject's land, which MacNicoll valued at $241,020. (Id.) Huffman appraised the subject's land at $200,000. (Ptfs' Ex 1 at 3.) Plaintiffs purchased the subject's land in 2005 for $250,579. Shah, WL 140767 at *2. Plaintiffs argue that Defendant incorrectly valued the subject's land because Defendant *Page 5 
gave it a higher value than another lot in the neighborhood, Lot 1, which has a better view (for which the original developer, Shaker Heights, applied a $30,000 view premium), is slightly larger by 0.02 acres, and is in a better location, further into the subdivision, away from the noisy, busy road Plaintiffs' property borders. (Ptfs' Ex 2 at 1, 3.)
B. Sales Comparison Approach
The sales comparison approach is defined in The Appraisal of RealEstate as:
 "[t]he process of deriving a value indication for the subject property by comparing similar properties that have recently sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sale prices * * * of the comparable properties based on relevant, market-derived elements of comparison."
Appraisal Institute at 297.
The sales comparison approach is most useful in determining the subject's value "where there are sufficient recent, reliable transactions to indicate value patterns or trends in the market."Id. at 300.
Both Plaintiffs and Defendant, through Huffman and MacNicoll respectively, submitted appraisals of the subject that use the sales comparison approach. (Ptfs' Ex 1 at 4, 5; Def's Ex A at 8.) Plaintiffs' sales comparison analysis, which analyzed six sales, resulted in a value estimate of $795,000. (Ptfs' Ex 1 at 1.) Defendant's sales comparison analysis, which compared four sales, resulted in a subject value of $1,100,000. (Def's Ex A at 2.) Defendant supplemented its initial analysis with information regarding five additional sales, in rebuttal to Plaintiffs' analysis. (Def's Exs R2-R6.)
Plaintiffs' comparable properties closed within 12 months before the appraisal date and are located within 2.5 miles of the subject, in both Washington County and Multnomah County. (Ptfs' Ex 1 at 4, 5.) Huffman made adjustments to the sales price of each of Plaintiffs' comparable properties for site size, view, quality of construction, gross *Page 6 
living area, basement size, garage size, and age, and a negative adjustment of $262,000 for cost to cure construction defects in the subject. (Id.)
Defendant's comparable properties in its Exhibit A closed within 12 months of the appraisal date and are located within Washington County. (Def's Ex A at 8.) Two of the comparable properties are located in the same neighborhood as the subject. (Id.) MacNicoll made adjustments to the sales price of each of Defendant's comparable properties for date of sale, location, site size and shape, topography, view, quality of construction, components, and age, and a negative adjustment of $262,000 for cost to cure construction defects in the subject. (Id. at 13.) Defendant's comparable properties in its Exhibit R are located within Multnomah County. (Def's Exs R2-R6.) Defendant's Exhibit R includes "comparable information" but no explanation of the adjustments made to the Exhibit R properties' sales prices. (Id.)
There is one comparable sale used by both Plaintiffs and Defendant. It is each appraiser's first comparable property. (Ptfs' Ex 1 at 4; Def's Ex A at 8.) That comparable is located three doors down the street from the subject. Shah, WL 140767 at *3. After adjustments, Huffman valued that property at $943,000, while MacNicoll valued it at $1,066,960. (Id.) However, Huffman admitted at trial that due to a "software glitch" his analysis of Plaintiffs' comparable properties gave them a downward adjustment for extra bathrooms when the analysis should have given an upward adjustment to those same properties. Due to that error, there was an approximately $15,000 undervaluation of each of Plaintiffs' comparable properties. Correcting for that error suggests a value estimate by Plaintiffs' appraiser of $958,000. *Page 7 
C. Trending Approach
In Shah v. Washington County Assessor, TC-MD No 080354B, this court determined that the RMV of the subject at 50 percent complete was $638,930 on January 1, 2007, for the 2007-08 tax year. Shah, WL 140767 at *5. Plaintiffs argue that the appraisal value estimate under the cost and sales comparison approaches is supported by applying reasonable adjustments to the court's earlier decision. Huffman adjusted the court's $638,930 figure upward to reflect the completion of the subject (by doubling the court's improvement value), and then downward to reflect the subject's construction defects and the decrease in the real estate market measured by the drop in the median sale price of properties in Washington County between tax years 2007-08 and 2009-10. (Ptfs' Ex 1 at 1.) Specifically, Huffman did the following:
 1. Doubled the 2007-08 tax year improvement RMV of $373,930 to reach a 2009-10 RMV of $747,860. (Id.)
 2. Held the 2007-08 tax year $265,000 land RMV constant and added that to the $747,860 RMV of the completed improvements to reach the subject's initial total RMV of $1,012,860. (Id.)
 3. Subtracted 8.7 percent of the $1,012,860 figure to adjust for the alleged declining market, to reach a tentative value of $924,741. (Id.)
 4. Subtracted $262,600 from the $924,741 figure to adjust for the construction defects, to reach a final total RMV of $662,141 for the 2009-10 tax year. (Id.)
Huffman refers to this approach as "trending" and justifies its use here by asserting that Defendant uses the same approach to appraise property in Washington County. (Id.) While property appraisal for tax purposes is generally limited to consideration of the three accepted approaches to valuation: cost, sales comparison, and income approaches, per OAR 150-308.205-(A)(2), the court is charged by the legislature to determine the RMV of *Page 8 
property on the basis of the evidence set forth by the parties, per ORS 305.412, and the court will therefore consider Huffman's trended adjudicated value as part of its final value determination.
D. Burden of Proof
ORS 305.427 provides that "[t]he burden of proof shall fall upon the party seeking affirmative relief" and that "a preponderance of the evidence shall suffice to sustain the burden of proof." A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue,4 OTR 302, 312 (1971) (citation omitted). In property tax cases, where the issue is the correct determination of the RMV of a property, this court has previously stated that "the value of property is ultimately a question of fact" and that "value is a range rather than an absolute."Phuoc Do v. Multnomah County Assessor, TC-MD No 100216C, WL 2420819 at *2-3 (June 15, 2011) (citations omitted).
 III. CONCLUSION
The court finds that primary reliance should be placed on the cost approach because the home is newly constructed and the market was volatile during the years of construction, which accounts for the significant adjustments both appraisers made to their comparable sales. However, in determining the RMV as of January 1, 2009, the court considered both the cost and sales-comparison approaches, as well as the court's previously adjudicated value. Based on a review of that evidence, the court concludes that the total RMV for the subject property for the 2009-10 tax year was $840,000, with $241,020 allocated to the land and $598,980 to the improvements. Additionally, the subject property has exception RMV of $98,600, which the court has determined should be reduced to $56,370.
Now, therefore,
IT IS THE DECISION OF THIS COURT that the values of property identified as Account R2132793 for tax year 2009-10 are as set forth above and *Page 9 
IT IS FURTHER DECIDED that Defendant shall correct the assessment and tax rolls to reflect the value set forth above and refund to Plaintiffs any excess taxes paid with statutory interest.
Dated this ___ day of July 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinsonon July 7, 2011. The Court filed and entered this documenton July 7, 2011.
[1] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2007. *Page 1